**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LATIFAH TRAVIS-BEY, and
NAREE ABDULLAH : CIVIL ACTION NO. **4:13-CV-1972**
 :
       Plaintiffs : (Judge Brann)
 :
       v. : (Magistrate Judge Blewitt)
 :
KLOPOTOWSKI, *et al.*, :
 :
 :
       Defendants :

## REPORT AND RECOMMENDATION

**I.**    **Background.**

On December 12, 2012, Plaintiffs, Naree Abdullah, an inmate at SCI-Mahanoy, in Frackville, Pennsylvania[1], along with his wife Latifah Travis-Bey, filed, *pro se,* this civil rights action pursuant to 42 U.S.C. § 1983 in the U.S. District Court for the Eastern District of Pennsylvania. (Doc. 4). Plaintiff Abdullah also filed a Motion to Proceed *in forma pauperis*. (Doc. 1). On December 14, 2012, the Eastern District issued an Order directing Plaintiff Travis-Bey to pay the filing fee or to file an application to proceed *in forma pauperis* within ten (10) days of the Order. (Doc. 2). On July 18, 2013, the Eastern District issued another Order, granting Plaintiff Abdullah leave to proceed *in forma pauperis*, and dismissing Plaintiff Travis-Bey from the action, as she failed to either pay the filing fee or file an application to proceed *in forma pauperis* within 10 days of the original order. (Doc. 3). Further, the Eastern District ordered that the case be transferred to the District Court for

---

[1] SCI-Mahanoy is located in Schuylkill County, which is part of the Middle District of Pennsylvania.

the Middle District of Pennsylvania.[2]  (Id.).

Named as Defendants in the Complaint are Pennsylvania Department of Corrections Eastern Region Deputy Secretary Klopotowski, Superintendent Kerestes of SCI-Mahanoy, Deputy Superintendent Beggs of SCI-Mahanoy, Deputy Superintendent Tritt of SCI-Mahanoy, Security Captain Datchko of SCI-Mahanoy, Pennsylvania State Trooper Wink, Pennsylvania State Trooper John Doe # 1, SCI-Mahanoy Mail Room Supervisor Brokenshire, Mail Room Inspector Jane Doe # 2, Visitor Search Corrections Officer Jane Doe # 3, Visiting Room Search Corrections Officer John Doe # 4, K9 Search Corrections Officer Hocking, SCI-Mahanoy Hearing Examiner Luquis, SCI-Mahanoy Unit Manager Beringer, SCI-Mahanoy Unit Manager Beck, SCI-Mahanoy Unit Manager Spaide, Chief Hearing Examiner Lewis, SCI-Mahanoy Grievance Coordinator Mikulski, Acting Grievance Coordinator Miller, Chief Grievance Coordinator Varner, and, lastly, the K9 search dog at SCI-Mahanoy, Rylee.

We will now screen the Plaintiff's Document 4 Complaint in compliance with the PLRA.

## II. Allegations of Complaint

In the current Complaint, Plaintiff alleges six counts.  (Doc. 4).  The first two, labeled as "Unlawful Arrest, Detention, and Search," arise out of the following allegations. (Id.). On February 26, 2012, Plaintiff Travis-Bey arrived at SCI-Mahanoy to visit her husband, Plaintiff Abdullah, who is an inmate. (Id.). Plaintiff alleges that after she arrived at the prison, and indicated who she would be visiting, she was escorted to a secured room and "accosted" by Defendants Datchko and Jane

---

[2]The Eastern District concluded, and we agree, that all of the claims set forth in the Complaint, and all of the defendants named therein reside in the Middle District of Pennsylvania.  Therefore, venue is proper in the Middle District.

2

Doe # 3. (Id., p. 4). At this time Defendant Datchko informed Plaintiff that she would have to be strip searched to proceed with her visit, and after Plaintiff agreed, she was escorted "through a series of locked doors and passageways." (Id.). In this room, instead of being searched, Plaintiff alleges that she was detained and interrogated by Defendants Datchko and Jane Doe # 3 for more than an hour. (Id.). During this time, the Defendants prevented Plaintiff Travis-Bey from leaving the room, and repeatedly questioned her about smuggling contraband into the prison, despite her repeated denials. (Id.). Eventually, Plaintiff agreed to submit to an "air scan", administered by Defendants Hocking, John Doe # 4, and Rylee. (Id. at p. 5). The search was inconclusive, however, Defendants detained and interrogated Plaintiff for an additional hour, at which point she was led back to the entrance of the prison. (Id.). There, Defendant Wink escorted Plaintiff into the back of his police cruiser, where he continued questioning Plaintiff about smuggling drugs into the prison. (Id. at p. 6).

As the second claim, count two of "Unlawful Arrest, Detention and Search," Plaintiff asserts that upon her departure from SCI-Mahanoy, immediately following the above incident, she was pulled over by Defendant John Doe # 1, and "ordered out of her vehicle at gun point," and then handcuffed and placed in the police cruiser. (Id.). Plaintiff avers that she was harassed, interrogated, and subject to racial slurs regarding her traditional Muslim garb for 45 minutes before ultimately being released. (Id. at p. 7).

Counts 3 and 4 are brought by Plaintiff Abdullah, and are labeled as "Defamation and Conspiracy to Violate Civil Rights," and, "Denial of Due Process, Defamation, and Conspiracy to Violate Civil Rights," and arise out of the following alleged facts. Plaintiff contends that on February

3

28, 2012, after visiting with his mother, he was escorted to the security office at SCI-Mahanoy and confronted by Defendant Datchko regarding bringing drugs into the prison. (Id. at p. 8). As a result of those allegations, Plaintiff was placed in the Restricted Housing Unit, and on March 20, 2012, was issued a misconduct report from Defendant Datchko, charging him with criminal solicitation, criminal conspiracy, refusing to obey a order, possession of contraband, unauthorized use of the mail or telephone, and lying to an employee. (Id. at p. 9). Plaintiff appealed the report, and subsequently, on April 5, 2012, Defendant Luquis dismissed the report without prejudice. (Id.). Following that dismissal, Plaintiff contends that "Luquis secretly worked with Capt. Datchko on how to prepare the false allegations against Mr. Abdullah to obtain her (sic) conviction." (Id.). On April 12, 2012, Plaintiff was issued a follow-up amended misconduct report charging him of virtually the same offenses as the first report. (Id.). On April 13, 2012, Plaintiff again appealed that report. (Id.).

On May 2, 2012, Plaintiff had a hearing before Defendant Luquis, where he was denied the opportunity to introduce evidence, namely the written affidavit of his wife, in his defense. (Id. at p. 10). Plaintiff Abdullah was found guilty of the charges, and sentenced to 270 days disciplinary custody time, and 360 days loss of contact visits. In regard to that conviction, Plaintiff states, "[]he disciplinary hearing report contained an excessive amount of convoluted and confusing ramblings and is unclear as to what exactly hearing examiner Luquis relied on in finding Mr. Abdullah guilty. Hearing examiner Luquis went as far in her disciplinary hearing report to revoke contraband that never existed." (Id.).

Subsequently, Plaintiff appealed that conviction on the grounds that he was denied various due process rights at his hearing. (Id.). On May 24, 2012, Defendants Beringer, Beck, and Spaide

met to decide the appeal. (Id. at p. 11). The appeal was denied. (Id.). Plaintiff filed a second appeal on June 4, 2012, with Defendant Kerestes, and it was again denied. (Id.). Finally, Plaintiff filed a third appeal, on June 13, 2012, with Defendant Lewis, who denied the appeal on June 22, 2012. Plaintiff alleges that both Defendants Kerestes and Lewis did not fairly consider arguments and that they "merely stat[ed] the same boiler plate response that [they] respond to all the appeals submitted to [their] office[s]." (Id.).

Plaintiff avers that he was denied due process rights throughout the conviction and appeal process, and as a result, he has been subjected to an extended stay in the Restricted Housing Unit, where he is denied many of the freedoms enjoyed by other inmates including denial of regular showers, recreational activities, and group religious services. (Id. at p. 12-13).

As the fifth count, Plaintiff Abdullah states a claim for "Denial of Mail Delivery and Association." (Id. at p. 15). Plaintiff asserts that at some point in February 2012, following the above-stated incidents, Defendants Datchko, Kerestes, Beggs, Tritt, Brokenshire, and Jane Doe # 1 began "intercepting and withholding" all mail sent from his wife, along with any mail that mentioned "the 2-26-12 conspiracy to frame Mrs. Travis-Bey and Mr. Abdullah." (Id. at p. 15).

Finally, in count 6, Plaintiff asserts a claim for "Conspiracy to Cover Up Framing." (Id. at p. 16). In regards to that claim, Plaintiff states only that, "Once Mr. Abdullah and Mrs. Travis-Bey began to present evidence that they were framed, defendants named herein met and conspired to cover for the people who carried out the acts against the couple." (Id.).

As relief, Plaintiffs seek the following: (1) compensatory damages jointly and severally against each defendant in the amount of $500,000; (2) punitive damages jointly and severally against each

defendant in the amount of $1,000,000; and injunctive relief to "put safeguards in place for the protection of visitors and prison inmates under investigation."[3] (Id. at p. 17).

### III. Standards of Review

#### A. PLRA

As stated, an application to proceed *in forma pauperis* was filed pursuant to 28 U.S.C. § 1915. (Doc. 4). The Prison Litigation Reform Act of 1995,[4] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

#### B. 42 U.S.C. § 1983

---

[3]To the extent that Plaintiff is seeking monetary damages (*i.e.*, compensatory damages) against Defendants in their official capacities, we will recommend that this request for relief be dismissed with prejudice as Plaintiff can only seek monetary damages from Defendants in their personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010); *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

[4]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

6

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); see also *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v.Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983."). "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's

7

claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

The Court uses the same standard to screen a complaint as it does for a 12(b)(6) motion to dismiss. *See Tourscher v. McCullough,* 184 F.3d 236, 240 (3d Cir. 1999).

### *C.      Motion to Dismiss*

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The

Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
> *Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly,* 550 U.S. at 555) (not precedential).

**IV. Discussion.**

   *1.    Counts 1 & 2*

Initially we note that because Plaintiff Travis-Bey has been dismissed from the instant case, we will recommend that Claims 1 and 2 be dismissed from the Complaint as well. It is well settled law that "prudential standing requires, *inter alia*, that a litigant assert his or her **own legal rights and not rely on the rights or interests of third parties**." (emphasis added) *Hill ex rel. Hill v. Pennsylvania Dept. Of Corrections*, 2013 WL 1320413 *1 (3d Cir. 2013); *see also Warth v. Seldin*, 422 U.S. 490 (1975). In the case of *Hill*, an inmate's wife, an non-prisoner, attempted to bring a § 1983 claim on behalf of her husband. In that case the Western District concluded, and the Third Circuit affirmed, that the wife lacked legal standing to bring a claim on behalf of another person, namely, her husband. *See Hill, supra.* We find that this reasoning applies similarly to the instant case. Plaintiff Travis-Bey has been dismissed from the case, and because Counts 1 and 2 relate only to her legal rights, Plaintiff Abdullah lacks standing to bring those claims on his own. Accordingly, we will recommend that these claims be dismissed.

Further, insofar as Defendant Rylee is named only in regard to the first two claims, we will recommend that this Defendant be dismissed as well. We find further that it is abundantly clear that Defendant Rylee, as a dog, is expressly not a "person" for purposes of § 1983, and thus cannot be subject to liability under federal civil rights law.

The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless it finds bad faith, undue delay, prejudice, or futility. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d

Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). Because Plaintiff Travis-Bey was dismissed without prejudice, we will accordingly recommend that her claims, Counts 1 and 2, also be dismissed without prejudice. Plaintiff Abdullah lacks standing to proceed on those claims, therefore, we recommend dismissal without prejudice pending Plaintiff Travis-Bey's reinstatement to the case.

### 2. *Count 3*

In regard to Count 3, "Defamation and Conspiracy to Violate Civil Rights," we will begin by recommending that this claim, to the extent it is a defamation claim, be dismissed. The Supreme Court has held that, "something more than simple defamation by the state official must be involved to establish a claim under section 1983," because defamation alone does not deprive an individual of any liberties or rights guaranteed by the Constitution. *Paul v. Davis*, 424 U.S. 693, 709 (1976). As such, we find that the Plaintiff's claim, insofar as it is a defamation claim, does not present a cognizable claim under § 1983, and therefore should be dismissed.

Alternatively, to the extent that Count 3 is not a defamation claim alone, and also contains a claim for conspiracy, we find that this claim should be dismissed for lack of personal involvement. It is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to

have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

The Supreme Court in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), repeated the personal involvement necessary in a § 1983 action. In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).
>
> "Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

*See Rhines v. Bledose*, 2010 WL 2911628, *2 (3d Cir.).

As discussed above, we do not find that Plaintiff has specifically stated the personal involvement of Defendants Datchko, Jane Doe # 3, John Doe # 1, John Doe # 4, Hocking, Wink, Kerestes, Beggs, Tritt, Lewis, Luquis, Miller, Mikulski, or Varner with respect to his constitutional claims. Plaintiff nakedly asserts that these Defendants "have a practice of framing prisoners and their visitors under investigation of drug activity where these investigation turn up no evidence of wrong doing despite their suspicions." (Doc. 4, p. 8). Despite this allegation, Plaintiff makes no reference to any specific action of any Defendant personally. As such, we must recommend that

12

Defendants Datchko, Jane Doe # 3, John Doe # 1, John Doe # 4, Hocking, Wink, Kerestes, Beggs, Tritt, Lewis, Luquis, Miller, Mikulski, and Varner be dismissed with regard to this claim. We also note that although Plaintiff names Defendant Klopotowski as a Defendant, he makes no further mention of this Defendant anywhere within the Complaint. As such, we will recommend that Defendant Klopotowski be dismissed from the case. In accordance with *Grayson*, we will recommend that these Defendants be dismissed without prejudice so that Plaintiff may amend his Complaint as to allege sufficient personal involvement by each of these Defendants. We caution, however, that if Plaintiff fails to do so, these Defendants may be dismissed with prejudice in the future.

### *3.     Count 4*

Plaintiff Abdullah's Count 4 is a claim for "Denial of Due Process, Defamation, and Conspiracy to Violate Civil Rights," against Defendants Datchko, Luquis, Benniger, Beck, Spaide, Kerestes, and Lewis. We find that, with respect to this claim, Plaintiff is attempting to improperly proceed on a theory of *respondeat superior* liability. it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims.
> *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868
> (2009) ("Government officials may not be held liable for unconstitutional
> conduct of their subordinates under a theory of *respondeat superior.*" );
> *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought
> under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* )
> (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather,
> each named defendant must be shown, via the complaint's allegations, to have
> been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S.

13

> at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

Prisoners do not have a constitutional right to a prison grievance system. *See Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 137-138 (1977); *Speight v. Sims*, No. 08-2038, 2008 WL 2600723 at *1 (3d Cir. 2008). The courts have also held further that an unfavorable response to an administrative grievance or appeal cannot give rise to a constitutional claim under section 1983. *Williams v. Klopotoski,* 2011 WL 1897410 *3 (M.D. Pa. 2011); *Alexander v. Gennarini*, 144 Fed. Appx. 924, 925 (3d Cir. 2005) (holding that involvement in post-incident grievance process is not a basis for § 1983 liability). Therefore, Plaintiff may not establish liability against Defendants Datchko, Luquis, Benniger, Beck, Spaide, Kerestes, or Lewis based on their responses to his administrative grievances or appeals, and such complaints by the Plaintiff do not establish a constitutional due process claim. As such, we find futility in allowing Plaintiff to amend with respect to Claim 4, and we will recommend that this claim be dismissed with prejudice in its entirety. *See Grayson, supra*.

### 4. Count 5

Plaintiff's fifth claim is for "Denial of Mail Delivery and Association" against Defendants Datchko, Kerestes, Beggs, Tritt, Brokenshire, and Jane Doe # 1. (Doc. 4, p. 15). In this count, Plaintiff is basically averring that the above Defendants conspired to withhold mail sent from his

wife, or any mail mentioning the alleged conspiracy against him. (Id., p. 15). Again, with regard to this claim, Plaintiff makes no mention of any personal involvement whatsoever of any of the Defendants. As the Third Circuit has held, "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation of actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

In the instant case, we find that, aside from naming the Defendants, Plaintiff has made no allegations of personal involvement, let alone one of "appropriate particularity". Therefore, we find that he has not stated a cognizable constitutional claim against Defendants Datchko, Kerestes, Beggs, Tritt, Brokenshire, or Jane Doe # 1.

Furthermore, because Plaintiff was convicted by a disciplinary hearing at SCI-Mahanoy, any claims for violation of due process in relation to that conviction are *Heck*-barred until he has any disciplinary convictions overturned on appeal or *via* §2254 habeas petitions. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

In *Heck*, the Supreme Court stated:

> A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487. *See also Murphy v. Bloom*, 443 Fed.Appx. 668, 669 (3d Cir. 2011). Additionally, to the extent Plaintiff is raising constitutional claims regarding his disciplinary confinement in the section

15

of his Complaint titled "Significant and Atypical Hardship,"[5] such claims are also *Heck*-barred. Accordingly, we will recommend that these claims be dismissed with prejudice because we find futility in allowing Plaintiff leave to amend with respect to Claim 5. *See Grayson, supra*. Plaintiff names Defendants Beringer, Beck, and Spaide only with respect to their involvement with Counts 4 and 5, therefore we will recommend these Defendants be dismissed with prejudice as well.

### *5.    Count 6*

Lastly, Plaintiff's sixth claim is a claim for "Conspiracy to Cover Up Framing." (Doc. 4, p. 16). With regard to this claim, Plaintiff states only "Once Mr. Abdullah and Mrs. Travis-Bey began to prevent evidence that they were framed, defendants named herein met and conspired to cover for the people who carried out the acts against the couple."

We find again that Plaintiff has not alleged sufficient personal involvement as to any Defendant with respect to this claim. It is widely accepted that "to impose liability for violation of civil rights under § 1983, plaintiff must establish with particularity that named defendant[s] [were] directly and personally involved in deprivation of plaintiff's rights." *Payton v. Vaughn*, 798 F. Supp 258 (E.D. Pa. 1992). Plaintiff in the instant matter has completely failed to make such a showing in regard to Claim 6. Furthermore, we find that this claim is essentially redundant, repeating the same allegations echoed throughout the Complaint. As such, we find futility in allowing Plaintiff

---

[5]We note that Plaintiff appears to be referring to the Court's holding in *Sandin v. Conner*, 512 U.S. 472 (1995), that requires an inmate to show that restraints impose "atypical and significant hardship" to invoke Due Process protection. Out of an abundance of caution, we also construe this section as presenting potential Eighth Amendment conditions of confinement claims.

to amend the Complaint in regard to this claim. We will recommend dismissal of Claim 6 with prejudice.

## V. Recommendation.

Based upon the foregoing, it is respectfully recommended that:

**(1)** Count 1 be dismissed without prejudice.

**(2)** Count 2 be dismissed without prejudice.

**(3)** Count 3 be dismissed without prejudice.

**(4)** Count 4 be dismissed with prejudice.

**(5)** Defendants Beringer, Beck, Spaide, and Klopotowski be dismissed with prejudice from the case.

**(6)** Count 5 be dismissed with prejudice.

**(7)** Count 6 be dismissed with prejudice.

> **s/ Thomas M. Blewitt**
> **THOMAS M. BLEWITT**
> **United States Magistrate Judge**

**Dated: August 23 , 2013**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LATIFAH TRAVIS-BEY, and
NAREE ABDULLAH,                    :CIVIL ACTION NO. **4:13 CV-1972**
                                   :
      Plaintiffs          :       (Judge Brann)
                                   :
      v.                  :       (Magistrate Judge Blewitt)
                                   :
KLOPOTOWSKI, *et al*.,             :
                                   :
                                   :
      Defendants          :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **August 23 , 2013.**

      Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

    Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *Defendant novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,

18

need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.


                                                    s/ Thomas M. Blewitt
                                                    **THOMAS M. BLEWITT**
                                                    **United States Magistrate Judge**

**Dated: August 23, 2013**