# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LATIFAH TRAVIS-BEY, and<br>NAREE ABDULLAH | : | CIVIL ACTION NO. **4:13-CV-1972** |
| Plaintiffs | : | (Judge Brann) |
| v. | : | (Magistrate Judge Blewitt) |
| KLOPOTOWSKI, *et al.*, | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I.     Background.**

On December 12, 2012, Plaintiffs, Naree Abdullah, an inmate at SCI-Mahanoy, in Frackville, Pennsylvania[1], along with his wife Latifah Travis-Bey, filed, *pro se,* this civil rights action pursuant to 42 U.S.C. § 1983 in the U.S. District Court for the Eastern District of Pennsylvania.  (Doc. 4). Plaintiff Abdullah also filed a Motion to Proceed *in forma pauperis*.  (Doc. 1).  On December 14, 2012, the Eastern District issued an Order directing Plaintiff Travis-Bey to pay the filing fee or to file an application to proceed *in forma pauperis* within ten (10) days of the Order.  (Doc. 2).  On July 18, 2013, the Eastern District issued another Order, granting Plaintiff Abdullah leave to proceed *in forma pauperis*, and dismissing Plaintiff Travis-Bey from the action, as she failed to either pay the filing fee or file an application to proceed *in forma pauperis* within 10 days of the original order. (Doc. 3).  Further, the Eastern District ordered that the case be transferred to the District Court for

---

[1]SCI-Mahanoy is located in Schuylkill County, which is part of the Middle District of Pennsylvania.

the Middle District of Pennsylvania.[2]  (Id.).

Named as Defendants in the Document 4 Complaint are Pennsylvania Department of Corrections Eastern Region Deputy Secretary Klopotowski, Superintendent Kerestes of SCI-Mahanoy, Deputy Superintendent Beggs of SCI-Mahanoy, Deputy Superintendent Tritt of SCI-Mahanoy, Security Captain Datchko of SCI-Mahanoy, Pennsylvania State Trooper Wink, Pennsylvania State Trooper John Doe # 1, SCI-Mahanoy Mail Room Supervisor Brokenshire, Mail Room Inspector Jane Doe # 2, Visitor Search Corrections Officer Jane Doe # 3, Visiting Room Search Corrections Officer John Doe # 4, K9 Search Corrections Officer Hocking, SCI-Mahanoy Hearing Examiner Luquis, SCI-Mahanoy Unit Manager Beringer, SCI-Mahanoy Unit Manager Beck, SCI-Mahanoy Unit Manager Spaide, Chief Hearing Examiner Lewis, SCI-Mahanoy Grievance Coordinator Mikulski, Acting Grievance Coordinator Miller, Chief Grievance Coordinator Varner, and, lastly, the K9 search dog at SCI-Mahanoy, Rylee.

We screened Plaintiff's Complaint and on August 23, 2013, we issued a Report and Recommendation recommending:

> **(1)** Count 1 be dismissed without prejudice.
>
> **(2)** Count 2 be dismissed without prejudice.
>
> **(3)** Count 3 be dismissed without prejudice.
>
> **(4)** Count 4 be dismissed with prejudice.
>
> **(5)** Defendants Beringer, Beck, Spaide, and Klopotowski be

---

[2]The Eastern District concluded, and we agree, that all of the claims set forth in the Complaint, and all of the defendants named therein reside in the Middle District of Pennsylvania.  Therefore, venue is proper in the Middle District.

dismissed with prejudice from the case.

      **(6)** Count 5 be dismissed with prejudice.

      **(7)** Count 6 be dismissed with prejudice.

(Doc. 11).

On November 14, 2013, Plaintiff filed an Objection to the Report and Recommendation. (Doc. 17). On March 21, 2014, the Court Ordered that:

1. Magistrate Judge Blewitt's Report and Recommendation is ADOPTED in part and REJECTED in part (ECF No. 11).

2. The defamation claim stated in Count 3 of Plaintiff's Complaint (ECF No. 4) is DISMISSED with prejudice.

3. Defendants Kerestes, Beggs, Tritt, Jane Doe #2, Jane Doe #3, John Doe #1, John Doe #4, K9 Rylee, Sgt. Hocking are DISMISSED from the action with prejudice.

4. Counts 4, 5, 6, and the Conspiracy claim in Count 3 of Plaintiff's Complaint are DISMISSED without prejudice.

5. Counts 1 and 2 of the Complaint are DISMISSED without prejudice.

6. Plaintiff's Motion for Leave to File and Amended Complaint is GRANTED (ECF No. 20). The Plaintiff shall file an amended Complaint within twenty-one (21) days.

7. The case is REMANDED to Magistrate Judge Blewitt for further proceedings consistent with this Order.

(Doc. 24).

On April 23, 2014, Plaintiff filed an Amended Complaint. (Doc. 27). On that same date

3

Plaintiff also filed a second Motion to Appoint Counsel[3]. (**Doc. 28**). We will now screen the Plaintiff's Amended Complaint in compliance with the PLRA. We will also address Plaintiff's outstanding Motions to Appoint Counsel. (**Docs. 18, 28**).

## II. Allegations of Amended Complaint

In the Amended Complaint, Plaintiff alleges two claims. (Doc. 27). The first, labeled as "Unreasonable seizure in result of Loss of Consortium," arise out of the following allegations. (Id., p. 7). On February 26, 2012, Plaintiff was visiting with his mother and awaiting a visit from his wife Travis-Bey at SCI-Mahanoy. (Id.). Plaintiff's wife did not show up for her visit that day. (Id.). After the visit with his mother, Plaintiff was strip searched, put his clothes back on, got his visitation pass and identification and proceeded back to his block. (Id.). Plaintiff was stopped by the security team and escorted to the security room where he was questioned by Defendant Datchko, Security Captain. (Id.). Plaintiff was asked if he had knowledge of drugs being smuggled into SCI-Mahanoy. (Id.). Plaintiff was then asked if he was expecting a visit from his wife. (Id.). Plaintiff told Defendant Datchko that he was waiting for a visit from his wife. (Id.). Defendant Datchko then informed Plaintiff that he had his wife detained and if he did not tell him what he knew about drugs being smuggled into the facility he would "make sure that plaintiff would never see his wife again. (Id.). Plaintiff told Defendant Datchko that he had the wrong people and neither him nor his wife brought drugs or had knowledge of drugs being brought into the institution. (Id.). Defendant

---

[3] On November 15, 2013, Plaintiff filed a Motion to Appoint Counsel which is also outstanding. (**Doc. 18**).

4

Datchko informed Plaintiff that his wife told both him and Defendant Trooper Wink that she brought Plaintiff drugs to the institution on two different occasions.  (Id.).

As a result of those allegations, Plaintiff was placed in the Restricted Housing Unit ("RHU"), and on March 20, 2012, was issued a misconduct report from Defendant Datchko, charging him with criminal solicitation, criminal conspiracy, refusing to obey a order, possession of contraband, unauthorized use of the mail or telephone, and lying to an employee.  (Id. at p. 9).  Plaintiff appealed the report, and subsequently, on April 5, 2012, Defendant Luquis dismissed the report without prejudice.  (Id.).

On April 12, 2012, Plaintiff was issued a follow-up amended misconduct report charging him of virtually the same offenses as the first report. (Id., p. 10).  On April 13, 2012, Plaintiff again appealed that report.  (Id.).

As the second claim, count two of Plaintiff's Amended Complaint alleges a claim for a "Procedural Due Process violation."  (Id. at p. 11).  Plaintiff asserts that on May 2, 2012, Plaintiff had a hearing before Defendant Luquis, where he was denied the opportunity to introduce evidence, namely the written affidavit of his wife, in his defense.  (Id.).  Plaintiff was found guilty of the charges, and sentenced to 270 days disciplinary custody time, and 360 days loss of contact visits.

Subsequently, Plaintiff appealed that conviction on the grounds that he was denied various due process rights at his hearing. (Id.).  The appeal was denied.  (Id.).  Plaintiff filed a second appeal on June 4, 2012, with Defendant Kerestes, and it was again denied.  (Id.).  Finally, Plaintiff filed a

third appeal, on June 13, 2012, with Defendant Lewis, who denied the appeal on June 22, 2012. (Id. at p. 12).

Plaintiff avers that he was denied due process rights throughout the conviction and appeal process, and as a result, he has been subjected to an extended stay in RHU, where he is denied many of the freedoms enjoyed by other inmates including denial of regular showers, recreational activities, group religious services and Plaintiff's correspondence and incoming and outgoing was seized, restricted and reproduced. (Id. at p. 12-13).

As relief, Plaintiffs seek the following: (1) compensatory damages jointly and severally against each defendant in the amount of $100,000[4]; (2) punitive damages jointly and severally against each defendant in the amount of $150,000 against Defendants Kerestes, Datchko, Wink, Tritt and Luquis; $50,000 against each Defendant Klopotowski, Beggs, Miller, Mikulski and Lewis; and $40,000 against each Defendant Beck, Beringer, Spaide, Brokenshire and Varner. (Id. at p. 35).

**III. Standards of Review**

   *A.   PLRA*

As stated, an application to proceed *in forma pauperis* was filed pursuant to 28 U.S.C. § 1915. (Doc. 4). The Prison Litigation Reform Act of 1995,[5] (the "PLRA"), obligates the Court to

---

[4] To the extent that Plaintiff is seeking monetary damages (*i.e.*, compensatory damages) against Defendants in their official capacities, we will recommend that this request for relief be dismissed with prejudice as Plaintiff can only seek monetary damages from Defendants in their personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010); *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

[5] Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

### *B.      42 U.S.C. § 1983*

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); see also *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v.Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983."). "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state

official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id*. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id*. Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

The Court uses the same standard to screen a complaint as it does for a 12(b)(6) motion to dismiss. *See Tourscher v. McCullough,* 184 F.3d 236, 240 (3d Cir. 1999).

8

### C.   *Motion to Dismiss*

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips* [*v. Co. of Allegheny*], 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility"

> determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. *Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly,* 550 U.S. at 555) (not precedential).

## IV. Discussion.

### 1. Count 1, "Unreasonable seizure in result of Loss of Consortium."

It appears that Plaintiff is attempting to set forth a claim for the unreasonable seizure of his person which resulted in the loss of privileges and visitation with his wife because of his placement in the RHU after his conviction for misconduct. This is not a viable claim. To the extent Plaintiff is attempting to set forth an Eighth Amendment conditions of confinement claim, Plaintiff has failed to properly allege the elements of a viable claim.

In *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 466 (M.D. Pa. 2010), the Court stated:

> The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air. *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). No static test determines whether conditions of confinement are "cruel and unusual." These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D.Pa 1989).
>
> To establish an Eighth Amendment claim, Mitchell must show that he

has been deprived of "the minimal civilized measure of life's necessities."

*Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir. 1997) (*quoting Young v. Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992)). In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-363. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the United States Supreme Court:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of single human need exists. *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991).

> In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id. at 298*. described by the Supreme Court in *Farmer,* the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id*. at 842.

To summarize, the Supreme Court has held that when an Eighth Amendment claim is brought against a prison official, a Plaintiff must meet two requirements: (1) the deprivation alleged must be objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). An objectively, sufficiently serious deprivation is one that denies the inmate "the minimal measures of life's necessities" such as food, water and shelter. *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d Cir. 2000) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 60 L. Ed. 2d 59 (1981)). Furthermore, the Third Circuit defined deliberate indifference as "a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001); *see also Bizzell v. Tennis*, 449 Fed. Appx. 112, 115 (3d Cir. 2011). Furthermore, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837. Also, "mere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violations of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Based on the facts alleged in his Amended Complaint, Plaintiff has not stated sufficient facts for the Court to conclude that his Eighth Amendment conditions of confinement claim should proceed because he has failed to allege: (1) that the deprivation alleged was objectively, sufficiently serious; and (2) that any Defendant acted with deliberate indifference to an excessive risk to his health and/or safety as required by *Farmer*. Furthermore, even if Plaintiff's wife were to bring a loss

of consortium claim based on Plaintiff's civil rights violations, "there is no authority to permit spousal recovery for loss of consortium based on violations of the other spouse's civil rights." *Dunshee v. McGurk*, 1987 WL 18418 (E.D. 1987). Plaintiff does not allege in his Complaint any actual personal involvement of Defendant Trooper Wink, who was investigating the allegations of drugs being brought into the institution and is not employed by SCI-Mahanoy or Defendant Brokenshire, the Mailroom Supervisor at SCI-Mahanoy, with respect to his Eighth Amendment conditions of confinement claim. We, therefore, will recommend that Defendants Wink and Brokenshire be dismissed with prejudice. Finally, we find futility in allowing Plaintiff to amend the Complaint in regard to this claim as he was already given the opportunity to file an Amended Complaint. We will recommend dismissal of Plaintiff's unreasonable seizure in result of loss of consortium claim with prejudice.

### 2. *Count 2, "Procedural Due Process violation."*

Plaintiff's Count 2 claim is a denial of Due Process claim against Defendants, Defendant Klopotowski, Eastern Region Deputy Secretary for the DOC; Defendant Datchko, Security Captain; Defendant Luquis, Hearing Examiner; Defendant Beringer, Unit Manager; Defendant Beck, Unit Manager; Defendant Spaide, Unit Manager; Defendant Lewis; Chief Hearing Examiner; Defendant Mikulski, Grievance Coordinator; Defendant Miller, Acting Grievance Coordinator; and Defendant Varner; Chief Grievance Coordinator are based on *respondeat superior* liability. We find that, with respect to this claim, Plaintiff is attempting to improperly proceed on a theory of *respondeat superior* liability. It is well established that personal liability in a civil rights action cannot be

imposed upon an official based on a theory of *respondeat superior*.  In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior."* ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* ) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

Furthermore, Prisoners do not have a constitutional right to a prison grievance system. *See Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 137-138 (1977); *Speight v. Sims*, No. 08-2038, 2008 WL 2600723 at *1 (3d Cir. 2008).  The courts have also held further that an unfavorable response to an administrative grievance or appeal cannot give rise to a constitutional claim under section 1983.   *Williams v. Klopotoski,* 2011 WL 1897410 *3 (M.D. Pa. 2011);

14

*Alexander v. Gennarini*, 144 Fed. Appx. 924, 925 (3d Cir. 2005) (holding that involvement in post-incident grievance process is not a basis for § 1983 liability).

In light of the well-settled case law, we find that Defendants Klopotowski, Datchko, Luquis, Beringer, Beck, Spaide, Lewis, Mikulski, Miller and Varner are entitled to dismissal with prejudice from this case. Based upon the above, we find that the Court should not allow Plaintiff to amend his Complaint against Defendants with respect to his constitutional claims as Plaintiff filed an Amended Complaint, and we find that there is futility if Plaintiff is allowed to amend his stated claims once again. *See Grayson v. Mayview State Hospital*, 293 F.3d at 111.

### 3. *Motions to Appoint Counsel* (**Docs. 18, 28**).

Plaintiff states in his second motion to appoint counsel (Doc. 28) that he is unable to afford counsel and does not have any family or associates who can pay the fee. (*Id.*). Plaintiff further states that issues are of a sensitive nature and involve complex issues of fact and law. (*Id.*). Plaintiff further states, "I have no idea of what i'm[sic] doing. I've been getting assistance fellow inmates who know about my situation." (*Id.*). Plaintiff does not have a constitutional right to appointed counsel. The Court in *Gordon v. Gonzalez*, 232 Fed. Appx. 153, 156 (3d Cir. 2007), stated:

> "[i]ndigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." *Id.* However, a district court does have discretionary authority to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). "If the district court determines that the plaintiff's claim has arguable merit in fact and law, the court should then consider a number of additional factors that bear on the need for appointed counsel." *Tabron v. Grace,* 6 F.3d 147, 155 (3d Cir.1993). Whether a district court

> chooses to request counsel depends on several factors, including: 1) the plaintiff's ability to present his or her own case; 2) the difficulty of the particular legal issues; 3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; 4) the plaintiff's capacity to retain counsel on his or her own behalf; 5) the extent to which a case is likely to turn on credibility determinations; and 6) whether the case will require testimony from expert witnesses. *Montgomery,* 294 F.3d at 499 (citing *Tabron v. Grace,* 6 F.3d at 155-57). This list of factors is not exhaustive. *Tabron,* 6 F.3d at 157.

(Internal footnote omitted).

Further, "a district court has 'broad discretion' to appoint counsel." *Id.* Considering the *Tabron* factors in turn, notwithstanding Plaintiff's contentions to the contrary, we find that Plaintiff can present his own case. In fact, Plaintiff can write proper English, presents his arguments in an intelligent manner, and has filed a Complaint, Objections, Objections, an Amended Complaint and two Motions for Counsel which clearly show that Plaintiff is able to present his own case and understands how he must present his filings to the Court for consideration. Based on these factors, we find that Plaintiff's Motion for Appointment of Counsel should be denied.

**V. Recommendation.**

Based upon the foregoing, it is respectfully recommended that:

(1) Count 1, "Unreasonable seizure in result of Loss of Consortium." be dismissed with prejudice.

(2)  Count 2, "Procedural Due Process violation." be dismissed with prejudice.

(3) Plaintiff's Motions Appoint to Appoint Counsel be denied.  (Docs. 18, 28).

(4)  Finally, it is recommended that the Court close this case.


                              **s/ Thomas M. Blewitt**
                              **THOMAS M. BLEWITT**
                              **United States Magistrate Judge**

**Dated: May 14 , 2014**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LATIFAH TRAVIS-BEY, and
NAREE ABDULLAH,                           :CIVIL ACTION NO. **4:13 CV-1972**
                                          :
       Plaintiffs               :         (Judge Brann)
                                          :
       v.                       :         (Magistrate Judge Blewitt)
                                          :
KLOPOTOWSKI, *et al.*,                    :
                                          :
                                          :
       Defendants               :

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **May 14 , 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

  Any party may object to a magistrate judge's proposed findings,
  recommendations or report addressing a motion or matter described in
  28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
  disposition of a prisoner case or a habeas corpus petition within ten (10)
  days after being served with a copy thereof.  Such party shall file
  with the clerk of court, and serve on the magistrate judge and all
  parties, written objections which shall specifically identify the

portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *Defendant novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.


                                                **s/ Thomas M. Blewitt**
                                                **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**

**Dated: May14 2014**